UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBSON 200 LLC,

     Plaintiff,

v.                               Case No.: 8:20-cv-00161-MSS-JSS

CITY OF LAKELAND, FLORIDA,
LAKELAND CODE ENFORCEMENT
BOARD, ANGELA KAISER, an
individual, JIM DEHNE, an individual,

     Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     Defendants, pursuant to Fed. R. Civ. P. 56, move for summary judgment on Plaintiff's Amended Complaint (Doc. 14), and state as follows:

## I.   Brief Overview

     Plaintiff's claims concern three Code Enforcement citations issued to its property, which is located at 200 East Robson St., Lakeland, Florida and consists of a mobile home park with multiple rented lots (the "Property"). Counts I through IV are asserted against the City and the Board and concern citation LCE18-04621, which addressed the condition of the fence on the Property.  In these counts, Plaintiff asserts the fines assessed against the Property are unconstitutionally excessive and the code provision under which its Property was cited is unconstitutionally vague. Count V asserts a claim for malicious prosecution against Angela Kaiser and Jim Dehne and

concerns citations LCE17-00229 and LCE18-03721, which stemmed from complaints about septic tanks on the Property.  Each case is addressed below.

## II.   Undisputed Material Facts for purposes of Summary Judgment

### A.   Code Enforcement Case LCE17-00229

1.     Plaintiff purchased the Property in September 2016. (Robson Dep. 19:12-17). The Property contains approximately 18 septic tanks, each serving one to four lots. (Robson Dep. 40:9-41:5; 45:14-17; 171:17-23).

2.     On January 10, 2017, Code Enforcement Officer Susan Stone cited the Property for violating Section 86-4 of the Land Development Code ("LDC"), which stemmed from Stone finding (and photographing) sewage water below a mobile home connected to a tank on the Property. (Doc. 14-1 at 1-2; Tison Aff. Ex. A at 150-154).

3.     The next day, the Health Department issued an inspection report noting "raw sewage on ground at unit 34 seeping under mobile home." (Tison Aff. Ex. A at 5-6).

4.     On January 19, 2017, Plaintiff forwarded to Stone an email it sent the Health Department inspector that stated the tank for lot 34 was pumped and attached a receipt from Atomic Septic Tank showing payment but not the work performed. (Robson Dep. Ex. 4, Errata at 2-3; Tison Aff. Ex. A at 30-32).

5.     Correspondence from Stone on March 9 and March 20, 2017 advised Plaintiff that Code Enforcement required a final inspection from the Health Department to close the case. (Tison Aff. Ex. A at 28-29). On April 11, 2017, Plaintiff provided Stone and her supervisor, Jim Dehne, a copy of its response to the Health Department, which included an April 5, 2017 email from Averitt Septic Tanks indicating it tested the drain

field and found it worked properly and a copy of an Averitt invoice indicating tanks were pumped on February 2, 2017. (Tison Aff. Ex. A at 36-39, 43-46). Also enclosed with that correspondence were copies of Plaintiff's March 25, 2017 letter to the Health Department acknowledging it was required to pay a permit fee, but disputing the need for an inspection. (Tison Aff. Ex. A at 40-42, 47-49).

6.      The Code Enforcement Board found there was a violation and imposed a $200 per day fine, entering an Order on May 3, 2017, which Plaintiff appealed to the state court on May 11, 2017. (Doc. 14 at 4; Tison Aff. Ex. A at 50, 55-57).

7.      After entry of the May 3, 2017 Order, Plaintiff's counsel provided Stone and the City Attorney a May 8, 2017 affidavit from Averitt's project manager, Mike Ingram, stating Averitt pumped the tank for Unit 34 on February 2, 2017, and that on April 5, 2017 he found the system "functioning properly." (Tison Aff. Ex. A at 64-67, 73-77).

8.      Following settlement talks between Plaintiff's counsel and the City, including Plaintiff providing Mr. Ingram's affidavit, Stone executed an Affidavit of Compliance and the Board dismissed the case with no fine. (Tison Aff. Ex. A at 60-61).

9.      On August 23, 2017, the state court dismissed Plaintiff's appeal, finding the Board's July 28, 2017 order "renders the appeal moot." (Doc. 14-2; Doc. 30-1 at 137).

10.      Defendant Code Enforcement Officer Kaiser was not involved in the investigation, citation, or prosecution of LCE17-00229. (Kaiser Aff. ¶4 ). Defendant Dehne supervised Susan Stone at the time, but otherwise only answered a call from Plaintiff, received correspondence, and was involved in settlement discussions between Plaintiff and the City. (Dehne Aff. ¶¶7-9, Exs. A-F)

11.     Mr. Ingram testified that on February 2, 2017 he found the septic tank levels for unit 34 were "up." (Ingram 33:24-34:8). He also observed what he believed to be "septic tank water" on the ground near the tank, which had a cracked lid, and he ordered a truck to come to the Property immediately to pump the tank because "we don't want kids playing in it." (Ingram 34:1-36:3; 44:22-45:25; 88:20-90:1).

**B.     Code Enforcement Case LCE18-03721**

12.     Plaintiff's property was cited on June 7, 2018 for violation of Section 46-1 of the LDC, which stemmed from a complaint and request for inspection by Alfred Parisi, the lot 2 tenant. During Kaiser's inspection of Mr. Parisi's home and lot on May 25, 2018, he stated he normally had sewage back-ups in his home, but did not that day; Kaiser, however, did observe toilet paper in the clean-out area under the mobile home and a sewage odor. (Doc. 14-3 at 1-2; Kaiser 226:6-227:17; Kaiser Aff. ¶5, Ex. A).

13.     After her May 25th inspection, Kaiser went on vacation. In her absence, Code Enforcement Officer David Anders inspected lot 1, during which he met with the mobile home tenants, saw their dated photos of backed-up sewage, smelled an odor of sewage, and observed toilet paper around the tank. (Anders 55:11-56:7; 60:1-14; 77:10-17).  Lot 1 and lot 2 are connected to the same tank. (Robson Dep. 171:16-23). Anders then issued the citation for unhealthful condition. (Anders 56:4-7; Doc. 14-3).

14.     When Kaiser returned from vacation she inspected the mobile home on lot 1, citing the homeowner for housing violations. (Kaiser 217:16-218:2).  During her inspection, she observed "foul fecal-smelling water in the tub about an inch and half

down from the drain." (Kaiser 217:7-218:2). The then-mobile home tenants provided photographs of backed-up sewage, which she saved to the file. (Kaiser Aff. ℙ6, Ex. B).

15.     A subsequent tenant of lot 1, Jonathan Burgos Cruz, observed "bad odor from a septic tank" and "excrement" both inside and outside of his mobile home. (Cruz Dep. 18:8-20; 21:16-22:1; 30:15-25; 73:25-74:11).

16.     Kaiser also received complaints from the tenants on lots 26 and 39.  Kaiser explained to Plaintiff that the plumber who inspected the tank on lot 26 explained the tank was full and dry, which happens when a tank is full for so long that the top forms a dry, crusty layer. (Kaiser 147:23-148:9; Kaiser Aff. ℙℙ7-9, Exs. C, D, E).  The mobile home owner on lot 26 eventually had the tank pumped herself, which resolved the issue on that particular lot. (Kaiser Aff. ℙ8, Ex. D).

17.     Kaiser also advised Plaintiff she received complaints from the mobile home owner on lot 39 and that the plumber who inspected that lot indicated the problem was outside the home. (Kaiser Aff. ℙℙ10-12, Exs. F, G, H).  Kaiser advised Plaintiff to provide documentation from a licensed plumber showing the tanks had been emptied or repaired, or the issue otherwise corrected. (Kaiser Aff. ℙ12, Ex. H).

18.     In a follow up email to Plaintiff, Kaiser explained she had evidence showing the tanks have been "overly full and not draining," and requested Plaintiff to empty the tanks. (Kaiser Aff. ℙ13, Ex. I; Robson Dep. Ex. 19; Errata at 2-3).  Plaintiff, however, responded that the City did not specify the tanks that had to be emptied and that it could not comply with the City's demands. (Kaiser Aff. Ex. I; Robson Dep. Ex. 19).

19.     Because Plaintiff had not provided the City proof the tanks had been emptied,

Kaiser submitted an October 18, 2018 affidavit of non-compliance, and the Board concluded violations still existed at its November 27, 2018 hearing. (Kaiser Aff. ¶14, Ex. J). Plaintiff appealed the order to the state court. (Doc. 30-3 at 5).

20.     The state court quashed the Board's Order, concluding the notice of violation did not clearly identify which septic tanks were noncompliant, that subsequent communications were "insufficient to properly notice" Plaintiff of the problem, and that the lack of notice denied Plaintiff due process. (Doc. 14-4 at 2; Doc. 30-3 at 363).

### C.     Code Enforcement Case LCE18-04621

21.     The Property was cited on June 28, 2018 for violating Section 4.4.1(i), LDC, which provides: "Fences and walls, whether required or optional, shall be maintained in sound condition." (Doc. 14-5). The Notice directed Plaintiff to "Please repair, replace or remove damaged fence.*** Please replace broken or damaged boards, repair areas of fence where leaning or coming apart, etc." (Doc.14-5).

22.     On July 19, 2018, Plaintiff sent a letter to Kaiser, disputing the violation, asserting it repaired the fence, and requesting the case be closed immediately. (Robson Dep. 256:16-257:15; Ex. 21; Errata at 2-3).

23.     Ten days later Plaintiff notified Dehne by email that it performed additional repairs and attached photos. (Kaiser Aff. Ex. N; Robson Dep. 278:2-20; 279:22-280:3; Ex. 25; Errata at 2-3). Dehne forwarded the email to Kaiser, who responded to Plaintiff by acknowledging some work had been done. But she stated that there remained damage and she labeled the photos attached to her email to show "what is wrong in each picture," advising that broken boards had to be replaced. (Kaiser Aff. Ex. N).

24.     On August 29, 2018, Plaintiff emailed Kaiser, explaining it completed more repairs and that the part of the fence "visible from the street is intact and vertical." (Robson Dep. 280:9-17, Ex. 25, Errata 2-3). Kaiser replied, stating that when a property is cited, it includes violations anywhere on the parcel, "not just where it is visible from the roadside," and asked if Plaintiff were ready for re-inspection. (Kaiser Aff. ⁋19, Ex. O). Plaintiff disputed the need to re-inspect. Id.

25.     On September 7, 2018, Plaintiff emailed Kaiser, attaching a letter in which Plaintiff again asserted the fence was repaired and that photos of repairs were sufficient to close the case. (Kaiser Aff. Ex. O; Robson Dep. Ex. 25). But Kaiser clarified that while it appeared some repairs were made, she needed to inspect the fence, including areas not visible from the street that she previously found to be noncompliant. Id.

26.     Kaiser executed an affidavit of noncompliance on November 6, 2018. (Kaiser Aff. ⁋21, Ex. Q).  At its November 27, 2018 hearing, after viewing Plaintiff's video of repairs to the fence (see video beginning at the 1:57:44 mark located at https://vimeo.com/channels/1360321/303111525), the Board found the violation existed and entered an order imposing a $50 per day fine, effective November 5, 2018, and accruing each day until the Property was compliant. (Doc. 30-2 at 7, 114-17).

27.     Plaintiff appealed the Board's order, but the state court affirmed. (Doc. 30-2 at 181-82). The fine continues to accrue for noncompliance. However, once the Property is compliant, Plaintiff may request that the fines be reduced to 10% of the total accrued fines, plus administrative costs. (Rewis Dep. 58:13-60:2; Dehne Dep. 152:24-153:18; LDC § 2-100(c)).

III.    **Memorandum of Legal Authority in Support of Summary Judgment**

   A. **Plaintiff's excessive fine claims in Counts I and II fail as a matter of law.**

Plaintiff claims the $50 per-day fine violates the ban on "excessive fines" under the Eighth Amendment to the Constitution and Article I, Section 17, of the Florida Constitution. (Doc. 14 at 8-11).  But these claims fail as a matter of law. "[A]nalysis of Excessive Fines claims is a pure question of law." United States v. One Parcel of Real Estate at 10380 SW 28th St., Miami, FL, 214 F. 3d 1291, 1293 (11th Cir. 2000).

The Eighth Amendment's proscription on excessive fines was "intended as a limitation on courts, not legislatures." U.S. v. 817 NE 29th Dr., Wilton Manors, FL, 175 F. 3d 1304, 1309 n.8 (11th Cir. 1999). There is a "strong presumption" that a fine is not unconstitutionally excessive if it is within the range "prescribed by the legislature." Moustakis v. City of Ft. Lauderdale, No. 08-cv-60124, 2008 WL 2222101, *1 (S.D. Fla. May 27, 2008). Florida courts also have concluded that fines within the legislatively-authorized range are "presumptively constitutional." State v. Cotton, 198 So. 3d 737, 743 (Fla. 2d DCA 2016). Under Florida law, "a statutorily authorized civil fine" is not excessive "unless it is so great as to shock the conscience of reasonable men or is patently and unreasonably harsh or oppressive." Locklear v. Fla. Fish & Wildlife Conserv. Comm'n, 886 So. 2d 326, 329 (Fla. 5th DCA 2004).

The fine the City imposed for the damaged fence—$50 per day—is within the range permitted by section 162.09, Florida Statutes, which provides the fine for a first violation "shall not exceed $250 per day." §162.09, Fla. Stat.  The Legislature also expressly approved the daily accrual of fines: "A fine imposed pursuant to this part

shall continue to accrue until the violator comes into compliance or until judgment is rendered in a suit filed pursuant to this section, whichever occurs first." Id.

Case law in the Eleventh Circuit demonstrates the fine here is not unconstitutional. In Moustakis, the city imposed a $150 per day fine on the plaintiff's property for code violations. 2008 WL 2222101, *1. The fines accrued daily for over 14 years because the plaintiff did not correct the violation, resulting in total fines over $700,000. But the district court rejected the excessive fine claim because section 162.09 authorizes such fines and permits daily accrual if the property is non-compliant. Id. at *2. The court found the fine did not "shock the conscience of reasonable men and is not patently and unreasonably harsh and oppressive. In fact, it would be contrary to reason and public policy to allow plaintiffs to evade responsibility simply by neglecting to (or deciding not to) pay fines for so long a period of time that the cumulative amount owed becomes large enough for such plaintiffs to argue unconstitutionally excessive punishment." Id.

The Eleventh Circuit affirmed that decision, citing the strong presumption that a fine is not unconstitutionally excessive if it is within the range permitted by the legislature. Moustakis v. City of Fort Lauderdale, 338 Fed. A'ppx. 820, 821 (11th Cir. 2009).  The Eleventh Circuit further clarified that the fine is "properly characterized" as a $150 per day fine—not the total amount of daily fines accrued, which sum "was created by the [appellants'] failure to bring the house into compliance" for 14 years. Id. at 822. It found "the $700,000 fine is, literally, directly proportionate to the offense." Id.

The Middle District reached a similar conclusion in <u>Conley v. City of Dunedin</u>, No. 08-cv-1793, 2010 WL146861 (M.D. Fla. Jan. 11, 2010).  There the city fined the plaintiffs $50 and $100 per day for parking an oversized truck in their driveway. <u>Id.</u> at *2. After failing to bring the property into compliance, the fines accrued to $198,000. <u>Id.</u> The court rejected the excessive fine claim the plaintiffs filed two years later, characterizing the fines as "relatively small" and explaining that because they were within the range permitted by the legislature, it could not find the fines were "'grossly disproportional' to the offense" <u>Id.</u> at *5. As to the total accrued fine, the court explained the plaintiffs' "refusal to comply with the code for three and a half years" did not render the daily fines excessive. <u>Id.</u>

The Middle District again rejected the same claims in <u>Lindbloom v. Manatee County</u>, No. 18-cv-2642, 2019 WL2503145 (M.D. Fla. June 17, 2019), in which the county cited the plaintiff's property for yard trash and an unsound roof.  The court rejected the excessive fine claims, observing the Eleventh Circuit had upheld "much greater fines under both the U.S. and Florida Constitutions." <u>Id.</u> at *8. The Middle District more recently rejected an excessive fine claim based on more than $29,000 in accrued fines for violation of the city's prohibition on overgrowth in <u>Ficken v. City of Dunedin</u>, No. 19-cv-1210, 2021 WL 1610408, at *23 (M.D. Fla. Apr. 26, 2021)(finding $500 per day fine for repeat violation and total fine of over $29,000 was not excessive).

The result should be the same here.  The operative fine is $50 per day, which is well below the statutory limit in section 162.09, Florida Statutes.  As the Middle

District and the Eleventh Circuit have determined, because the fine is well below the legislative limit, there is a strong presumption it is not unconstitutional.

Plaintiff, however, focuses on the total accrued fine, arguing the failure to cap daily fines renders the fine excessive. The Eleventh Circuit has rejected this argument and this Court should as well. The fine is "properly characterized" as the per-day fine the city imposed. <u>Moustakis</u>, 338 Fed. App'x at 822. The total accrued fine is directly proportional to Plaintiff's decision not to correct the violation years after the state court affirmed the Order imposing the fine and notwithstanding that section 162.09 expressly provides such fines shall accrue until the property is compliant.

Plaintiff also ignores the fact that once the Property is compliant, Plaintiff may request the fines be reduced to 10% of the total accrued fines, plus administrative costs (which §162.10 permits). (Rewis 58:13-60:2; Dehne 152:24-153-18). Article IV, Section 2-100(c) of the LDC expressly authorizes the Board to "reduce a code enforcement fine imposed pursuant to this section," which shows the fines are not disproportionate or conscience-shocking, but are directed towards compliance.

**B.** <u>**The vagueness claims in Counts III and IV fail as a matter of law.**</u>

Plaintiff also claims Section 4.4.1(i) of the LDC is unconstitutionally vague. This section provides: "Fences and walls, whether required or optional, shall be maintained in sound condition." Plaintiff argues the term "sound condition" is unconstitutionally vague, and that the provision "fail[s] to describe with any certainty" what "sound condition" means, rendering compliance "impossible." (Doc. 14 at 11-12). These claims are precluded by *Rooker-Feldman*, res judicata, and fail on the merits.

1.   *Rooker-Feldman*

Under *Rooker-Feldman*, "'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.  Review of such proceedings may only be had in [the United States Supreme Court].'" Narey v. Dean, 32 F. 3d 1521, 1524 (11th Cir. 1994)(citations omitted).  If a state court upholds a local agency decision, *Rooker-Feldman* applies as well "because a challenge to the agency's decision necessarily involves a challenge to the judgment of the state court." Id. at 1525. *Rooker-Feldman* applies if "'the party had a reasonable opportunity to raise his federal claims in the state court proceedings.'" Battle v. City of Florida, 28 F. Supp. 2d 1331, 1335 (M.D. Ala. 1998). In Florida "'[c]onstitutional claims . . . are properly cognizable on appeal to the circuit court from a final order of an enforcement board taken pursuant to section 162.11. . ..'" Kirby v. City of Archer, 790 So. 2d 1214, 1215 (1st DCA 2001)(citations omitted); Central Florida Inv., Inc. v. Orange County, 295 So. 3d 292, 295 (Fla. 5th DCA 2019)(noting broad review of appeal (as opposed to certiorari) under section 162.11).

The Eleventh Circuit "appl[ies] *Rooker-Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court to review and reject a state court's judgments." Target Media Parties v. Specialty Marketing Corp., 881 F. 3d 1279, 1285-86 (11th Cir. 2018). To determine whether *Rooker-Feldman* precludes a claim, courts in the Eleventh Circuit "consider whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." Id. A claim is 'inextricably intertwined' with a state court

judgment "if it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." Id. at 1286. Federal claims that courts have found to be 'inextricably intertwined' with state court orders are "those raising a question that was or should have been properly before the state court." Id. But as narrow as its application may be, a state court loser cannot avoid *Rooker-Feldman* by cloaking its pleadings "in the cloth of a different claim. Pretext is not tolerated." May v. Morgan County, 878 F. 3d 1001, 1005 (11th Cir. 2017).

*Rooker-Feldman* precludes Plaintiff's vagueness claims here.  In its appeal of the Board's Order to the state court, Plaintiff raised vagueness as a defense to enforcement of section 4.4.1(i), arguing this section "is unconstitutionally vague as applied to Robson because it does not provide any description of the permissible methods by which a party may or may not keep a fence in a sound condition." (Doc. 30-2 at 141-42). But the state court rejected Plaintiff's vagueness challenge, concluding that "'when measured by common understanding and practice' [Plaintiff] was provided with fair notice of what was prohibited by the Code." (Doc. 30-2 at 182).

The undisputed facts show Plaintiff expressly challenged section 4.4.1 as unconstitutionally vague in its appeal to the state court, and that the state court rejected this challenge, affirming the Board's order in an August 22, 2019 opinion issued well before Plaintiff filed suit in this Court on January 22, 2020. (Doc. 1).  By this federal suit, Plaintiff is requesting—with respect to its vagueness claims—that this Court reject the state court's opinion, including its conclusion that the ordinance is not unconstitutionally vague, which *Rooker-Feldman* precludes. Target Media, 881 F. 3d at

1285-86. If Plaintiff were successful, this Court would negate the state court's conclusion that the ordinance is not unconstitutionally vague, essentially determining the state court wrongly decided the issue, which *Rooker-Feldman* prohibits. Id.

### 2.     Res judicata

Res judicata bars a claim when "(1) a court of competent jurisdiction has (2) rendered a final judgment on the merits in another case involving (3) the same parties and (4) the same cause of action." Shurick v. Boeing Co., 623 F. 3d 1114, 1116-17 (11th Cir. 2010). Florida law similarly provides that a judgment "on the merits. . . in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." Florida Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001)(citations omitted). Florida law thus requires that the cases share certain "identities": "'(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made'; and (5) the original claim was disposed on the merits." Lozman v. City of Riviera Beach, 713 F. 3d 1066, 1074 (11th Cir. 2013)(citations omitted).

Here, the state court had jurisdiction under section 162.11, Florida Statutes, to hear Plaintiff's appeal, and that court rendered a final order affirming the Board's order, which Plaintiff did not appeal.  The parties or their privies to both proceedings

are the same or occupy similar capacities, so the identity of the persons and parties and the identity of the quality or capacity of the persons prongs are both met.

Furthermore, both Plaintiff's state court appeal and its vagueness claims here challenge the Board's order on the basis that section 4.4.1 is unconstitutionally vague. So the identity of the thing sued for and the identity of the cause of action are the same in the state court appeal and this federal action. It matters not that Plaintiff seeks different relief in this suit because the factual allegations that form the basis for its prior state court appeal and its vagueness claims are the same: the enforcement of section 4.4.1(i). "[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of *res judicata*." Ragsdale v. Rubbermaid, 193 F. 3d 1235, 1239 (11th Cir. 1999).

Finally, the state court's order affirming the Board's order was not based on mere jurisdictional defects, but the court's substantive inquiry into whether section 4.4.1 provided fair notice of what conduct is prohibited. The order was therefore a final judgment on the merits. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1189-90 (11th Cir. 2003).  Accordingly, res judicata precludes Plaintiff's vagueness claims.

### 3.    The vagueness claims also fail as a matter of law.

Plaintiff appears to assert both a facial and an as-applied challenge to section 4.4.1(i). (Doc. 14 at 12-13). To prove a law is unconstitutionally vague as applied, the plaintiff must show that in its particular circumstance the law "either (1) does not provide persons of ordinary intelligence a reasonable opportunity to know what is

prohibited, or (2) does not provide sufficiently explicit standards for those who apply it." Ross, 141 F. Supp. 2d at 1364.

To establish a law is vague on its face, the plaintiff must show the law is vague "in the sense that no standard of conduct is specified at all—that it is impermissibly vague in *all* of it applications." Ross v. City of Orlando, 141 F. Supp. 2d 1360, 1364 (M.D. Fla. 2001)(emphasis in original). The traditional vagueness test asks whether the law is so vague that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." DA Mortgage, Inc. v. City of Miami Beach, 486 F. 3d 1254, 1271 (11th Cir. 2007). A plaintiff asserting a facial challenge bears the burden of proving the law "could never be applied in a constitutional manner." Id. at 1262. But "due process requires less exactitude in a statute that lacks criminal sanctions," such as the code ordinance at issue here. Ross, 141 F. Supp. 2d at 1363.

While Plaintiff maintains the phrase "sound condition" in section 4.4.1(i) is unconstitutionally vague, the adjective "sound" is readily ascertainable from an ordinary dictionary.  The Merriam-Webster online Dictionary refers to "sound" (the adjective) as meaning "free from flaw, defect or decay," "solid, firm," "stable," or "secure, reliable." https://www.merriam-webster.com/dictionary/sound.

Even if the dictionary definition were not sufficient, the notice of violation advised Plaintiff to "replace broken or damaged boards, repair areas of fence where leaning or coming apart, etc." (Doc. 14-5 at 1). The LDC also sets forth that "fences and walls shall mean free-standing fences and walls that are not structural elements of a building." LDC, 4.4.1(a). As such, the Code requires fences to be sound and

freestanding. To the extent "freestanding" is also unclear to Plaintiff, it need look no further than Merriam-Webster's online Dictionary, which defines "freestanding" as "standing alone or on its own foundation free of support or attachment." https://www.merriam-webster.com/dictionary/freestanding.

Photographs dated prior to the Board's November 27, 2018 hearing and the video Plaintiff presented at that hearing show areas of the fence that are leaning and have missing or broken boards. (Kaiser Aff. Exs. M, N, R). These photographs show Plaintiff's fence is not sound and freestanding as the LDC requires.

And even if "sound condition" or "freestanding" were not terms easily found in a common dictionary, the Constitution does not require absolute clarity. Grayned v. City of Rockford, 408 U.S. 104, 110 (1972). As the Supreme Court has explained, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." Id. There the Court concluded that while the words of the ordinance before it were "marked by 'flexibility and reasonable breadth, rather than meticulous specificity,'" it was "clear what the ordinance as a whole prohibits." Id.

Similarly, here, the ordinance as a whole is sufficiently clear in what it prohibits. Fences must be sound (free from defect or decay, solid, firm, stable, and secure) and freestanding (standing alone or on its own foundation, free of support or attachment). The City's notice of violation also directed plaintiff to replace broken or damaged boards and repair areas of the fence that were leaning or falling apart. The LDC and related documents, including the notice of violation, provided fair notice of what conditions were prohibited. The vagueness claims therefore fail as a matter of law.

**C.  <u>The malicious prosecution claim is subject to summary judgment.</u>**

In Count V Plaintiff asserts a malicious prosecution claim against Code Enforcement Officer Angela Kaiser and her supervisor, Jim Dehne, in their individual capacities based on two separate code enforcement citations stemming from reports of overflowing septic tanks on the Property. It is unclear whether Plaintiff is making a federal or state law malicious prosecution claim (or both), so Defendants address why this malicious prosecution claim fails under both standards.

To establish a federal malicious prosecution claim, the plaintiff must prove "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." <u>Cutino v. Untch</u>, 79 F. Supp. 3d 1305, 1314 (S.D. Fla. 2015). Under Florida law, to prove a claim for malicious prosecution the plaintiff must show "(1) an original judicial proceeding was commenced or continued against him, (2) the defendants were the legal cause of that proceeding, (3) the termination of the original proceeding constituted a bona fide termination of the proceeding in the plaintiff's favor, (4) there was an absence of probable cause for the original proceeding, (5) malice existed on the part of the defendants, and (6) the plaintiff suffered damages as a result of the original proceeding." <u>Id.</u> at 1315; <u>Durkin v. Davis</u>, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002).  Plaintiff must satisfy every element of this six-part test. <u>Id.</u>

A "bona fide termination" means the first suit "ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the . . . allegations contained in the first suit, so that a court handling the malicious prosecution suit [ ]

can conclude with confidence [ ] that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit." Bakri v. City of Daytona Beach, 716 F. Supp. 2d 1165, 1175 (M.D. Fla. 2010)(citing Cohen v. Corwin, 980 So. 2d 1153, 1155-56 (Fla. 4th DCA 2008)). Where "the nature of the dismissal in the first case was technical," the court must "examine the record of that prior proceeding to determine whether the disposition was on grounds which were not inconsistent with the defendant's wrongdoing.'" Cohen, 980 So. 2d at 1156. A dismissal is favorable if it indicates the original suit lacked merit. Union Oil of Cal. Amsco. Div. v. Watson, 468 So. 2d 349, 354 (Fla. 3d DCA 1985).

Plaintiff's malicious prosecution claim is subject to summary judgment under federal and state law. First, Plaintiff cannot establish a federal claim because there is no evidence of a seizure under the Fourth Amendment. Second, Plaintiff cannot satisfy each element of a malicious prosecution claim under state or federal law because it cannot show a bona fide termination in its favor, lack of probable cause, or malice, as set forth below. And third, Kaiser and Dehne are entitled to qualified immunity.

Plaintiff first cannot show a seizure under the Fourth Amendment. While the City could institute foreclosure proceedings under chapter 162, there is no evidence the City has attempted to institute foreclosure and the mere existence of the lien alone is not a seizure, or at a minimum, the law is not clearly established that such a lien constitutes a seizure. JERMC LTD v. Town of Redington Shores, 8:19-CV-688-T-60AAS, 2020 WL 4227429, at *4 (M.D. Fla. July 23, 2020); Bey v. City of Tampa, No. 8:14-cv-954-T-27AEP, 2014 WL 4629665, at *4 (M.D. Fla. July 25, 2014).

Nor can Plaintiff satisfy all elements of a malicious prosecution claim. As to LCE17-00229, there is no showing Kaiser or Dehne was the legal cause (or continuation) of the case. Kaiser did not initiate or participate in the first case at all, and, while Dehne was Ms. Stone's supervisor, there is no evidence of his involvement other than that he talked to Plaintiff over the phone, received correspondence to the Health Department, and with the City Attorney's office, helped settle the matter.

Plaintiff likewise cannot establish a bona fide termination or lack of probable cause. The case file for LCE17-00229 includes photos of standing dark water around the septic tank, a Health Department inspection indicating raw sewage on the ground, and during his deposition, Mr. Ingram testified that when he inspected, he likewise found such water around the septic tank and called a crew to pump it immediately because he did not want to risk any children playing in that water.

To resolve LCE17-00229 (*after* entry of the Board's order), Plaintiff's counsel provided an affidavit from Averitt Septic confirming that after the violation was issued, Plaintiff had the tank pumped a second time. As Plaintiff's counsel noted, this occurred in the course of settlement negotiations that involved Plaintiff completing work on the septic tanks that the City required. (Tison Aff. Ex. A at 70-77). As a result of Plaintiff providing the City that affidavit, the Property was determined to be in compliance, the code action dismissed, and the state court dismissed Plaintiff's appeal as moot. Plaintiff has no claim against Kaiser or Dehne because they were not involved in the initiation or continuation of that action and because there was no bona fide

termination in its favor, no lack of probable cause, and no evidence of malice.

The same is true of the citation in LCE18-03721, which Kaiser issued.  First, there was no bona fide termination in Plaintiff's favor.  The second code enforcement action resulted in the state court quashing the Board's order, but not because it found the citation lacked merit or that the Property was in compliance.  Rather, the state court quashed the order because it found Plaintiff did not have sufficient notice of the noncompliant septic tanks.  Because the state court order does not indicate Plaintiff's innocence of the violation, it is not a bona fide termination.

Plaintiff likewise cannot establish an absence of probable cause in LCE18-03721.  "Probable cause to institute civil proceedings requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.'"  Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 62-63 (1993).  "'[I]t is not necessary to show that the instigator of a lawsuit was certain of the outcome of the proceeding, but rather that he had a reasonable belief, based on the facts and circumstances known to him, in the validity of the claim.'"  DeMartini v. Town of Gulf Stream, 942 F. 3d 1277, 1301, 1303 (11th Cir. 2019).

Courts inquire as to "whether all of the facts and circumstances available" gave the malicious prosecution defendant "a reasonable belief that it had a tenable [] claim."  Id.  Even in the context of criminal actions, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018).  So "proof beyond a reasonable doubt or . . . preponderance of the evidence [standards] have no place in

the [probable cause] decision." <u>Florida v. Harris</u>, 568 U.S. 237, 243-44 (2013)).

Moreover, in determining whether probable cause exists, an officer is not "required to

sift through conflicting evidence or resolve issues of credibility, so long as the totality

of the circumstances present[ed] a sufficient basis for believing that an offense ha[d]

been committed." <u>Huebner v. Bradshaw</u>, 935 F.3d 1183, 1188 (11th Cir. 2019)

(citations omitted).

      Additionally, Kaiser and Dehne are entitled to qualified immunity, which

requires that a defendant "first prove that he was acting within the scope of his

discretionary authority when the allegedly wrongful acts occurred." <u>Lee v. Ferraro</u>,

284 F.3d 1188, 1194 (11th Cir. 2002).  If the official establishes this, the burden shifts

to the plaintiff to demonstrate qualified immunity is inappropriate.  <u>Jacoby v. Baldwin</u>

<u>County</u>, 835 F.3d 1338, 1344 (11th Cir. 2016). To meet that burden, the plaintiff must

demonstrate the facts, viewed in the light most favorable to him, show the officer's

conduct violated a federal right that was "clearly established." <u>Tolan v. Cotton</u>, 134 S.

Ct. 1861, 1866 (2014). In the context of a malicious prosecution claim, to receive

qualified immunity, an officer need only demonstrate he had arguable probable cause.

<u>Grider v. City of Auburn</u>, 618 F. 3d 1240, 1257 (11th Cir. 2010). "Arguable probable

cause exists where 'reasonable officers in the same circumstances and possessing the

same knowledge as the Defendants could have believed probable cause existed." <u>Id.</u>

      Here, there is no question that Kaiser and Dehne were acting within the course

and scope of their employment as employees of the Code Enforcement Division.

Moreover, Kaiser and Dehne had probable cause, or at least arguable probable cause, to support the citation and continuation of LCE18-03721. Tenants complained about conditions on the Property, Kaiser and other officers inspected the Property, observed a sewage odor and what appeared to be toilet paper and sewage water around the tank and under mobile homes. Kaiser also spoke to plumbers who inspected tanks at the Property. One explained the tank for lot 26 had been full for so long that it formed a dry crusty top.  Another explained the issue at lot 39 was on the Property owner's side.

The totality of circumstances show Kaiser—who did not issue the citation but prosecuted the case—had probable cause to pursue the violation of section 46-1 of the LDC, which provides "[i]t shall be unlawful for any person to create, maintain, or contribute to any condition or circumstance which is deemed prejudicial to the public health, or which is in any manner likely to cause or create any unhealthful condition in the city." Based on the undisputed facts, at a minimum there was arguable probable cause as a reasonable person in her position could conclude there was sufficient evidence to support a finding that the Property was in violation of the LDC's unhealthful condition prohibition.  Kaiser therefore is entitled to qualified immunity.

Plaintiff does not set forth allegations directly implicating Mr. Dehne, but the investigation of his direct report, Kaiser, established probable cause, and there is no showing of his involvement other than to advise Ms. Kaiser on the proper citation for this particular violation and assist when she had questions. (Dehne 128: 20-129:9)

Kaiser and Dehne would likewise be entitled to qualified immunity under Florida law, specifically, Fla. Stat. § 768.28(9)(a), which provides:

Page **23** of **25**

> No officer, employee, or agent of the state or of any of its subdivisions shall be
> held personally liable in tort . . . for any injury or damage suffered as a result of
> any act, event, or omission of action in the scope of her or his employment . . .
> unless such officer, employee, or agent acted in bad faith or with malicious
> purpose or in a manner exhibiting wanton and willful disregard of human
> rights, safety, or property . . ..

Section 768.28(9)(a) provides immunity for government actors as long as they do not

act in bad faith, or with malice or willful and wanton disregard for human rights or

safety. Aravena v. Miami-Dade County, 928 So. 2d 1163, 1167 (Fla. 2006); McGhee

v. Volusia County, 679 So. 2d 729, 732 (Fla. 1996).

There is no dispute that Kaiser's actions (and Dehne's to the extent he took any)

were taken in the course and scope of their employment as employees of the Code

Enforcement Division. Moreover, none of their actions show a malicious purpose or

wanton and willful disregard for Plaintiff's rights. While Plaintiff has alleged each of

the citations constituted an "attack," these Defendants were simply performing their

duties, which include issuing citations for code violations. Plaintiff was not singled

out, targeted, or "attacked." Indeed, Kaiser's discovery responses show she issued over

1,000 citations in 2015, 2016, and 2017, and more than 900 in 2018—many of which

included multiple citations issued to the same property. (Ex. A (Ans. Int. #11); Ex. B

(Resp. RTP #20 at 2229-39)).  In reviewing citations issued to property on 200 East

Robson Street, it is also apparent that individual mobile owners were cited, not

Plaintiff, when a violation was within a home. (Rewis Aff. Ex. A).

Nor is Plaintiff's Property the only property to receive multiple citations.  There

were over 3,000 properties to which the City issued three or more citations between

January 2017 and January 2020. (Rewis Aff. Ex. B).  There is no evidence of malice against Plaintiff.  They were treated like any other property owner with multiple code violations. For these reasons, Kaiser and Dehne are entitled to summary judgment.

WHEREFORE, Defendants respectfully request that this Court enter summary judgment in their favor on the entirety of Plaintiff's claims.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served via email on: Jason S. Lambert, Esq., Jason.lambert@dinsmore.com, Brandon T. Holmes, Esq., brandon.holmes@dinsmore.com, Jessica.lovins@dinsmore.com, eileen.garvey@dinsmore.com and tjuni.strawter@dinsmore.com on July 14, 2021.

GRAYROBINSON, P.A.

/s/ Kristie Hatcher-Bolin
**MARK N. MILLER, ESQ.**
Florida Bar No. 239216
mark.miller@gray-robinson.com
karen.pollard@gray-robinson.com
**KRISTIE HATCHER-BOLIN, ESQ.**
Florida Bar No. 521388
kristie.hatcher-bolin@gray-robinson.com
linda.august@gray-robinson.com
**MATTHEW D. JONES, ESQ.**
Florida Bar No. 86003
matthew.jones@gray-robinson.com
linda.august@gray-robinson.com
Post Office Box 3
Lakeland, Florida 33802-0003
Telephone:  (863) 284-2251
Facsimile:  (863) 683-7462
Attorneys for Defendants

/4120287/126#44519224 v13